GRAY P. WEBB AND OTHERS, PLAINTIFFS IN ERROR, *v.* JOHN DEN, LESSEE OF POLLY WEATHERHEAD.

In 1839, the legislature of Tennessee passed a law containing the following provision, namely: "That whenever a deed has been registered twenty years, or more, the same shall be presumed to be upon lawful authority, and the probate shall be good and effectual, though the certificate on which the same has been registered, has not been transferred to the register's books, and no matter what has been the form of the certificate of probate or acknowledgment.

A deed to " the legatees and devisees of the late Anthony Bledsoe," which was certified by the register of Maury county, Tennessee, 'to·have been recorded there in January, 1809, was, under the authority of this statute, properly admitted in evidence, although informalities existed with respect to its being proved, and with respect to the acknowledgment of a *feme covert.*

So, also, the deed is effectual, under the circumstances of the case, to transfer a fee-simple estate to the legatees and devisees of Anthony Bledsoe, whose will was in evidence. The deed was a release of the bare legal title to equitable·owners in fee, on partition between them as tenants in common. The old common law rule as to the distinction between releases from one joint-tenant to another, and from one tenant in common to another, is not applicable.

A defendant in ejectment cannot object to the production in evidence of one of the muniments of the plaintiff's title, because it was "*res inter alios acta.*"

THIS case was brought up, by writ of error, from the circuit court of the United States for the middle district of Tennessee.

The case is stated in the opinion of the court.

It was argued by *Mr. Gillet,* for the plaintiffs in error ; no counsel appearing for the defendant.

Mr. Justice GRIER delivered the opinion of the court.

On the trial of this case, the plaintiff below having shown that the lessor of plaintiff was one of the children of Anthony Bledsoe,— also the will of Anthony Bledsoe, and a grant of five thousand acres of land, by the State of North Carolina, to Nicholas Lang — offered in evidence a copy of a paper writing purporting to be a deed from John J. Lang, Basset Stith, and Mary his wife, and others, devisees of the legal estate, to the " legatees and devisees of the late Anthony Bledsoe," for the one fourth part of said tract, or, twelve hundred and fifty acres, by certain metes and bounds. This copy is certified by the register of Maury county, Tennessee, as there recorded on the 11th of January, 1809. The defendants objected to the admission of this copy as evidence, " because it was not duly proved, acknowledged, or authenticated, so as to entitle the same to registration, and there was no proof of the acknowledgment or privy examination of Mary Stith, the *feme covert,* and that the registration of said deed being unauthorized, a copy would not be read." The court overruled the objection, and permitted the deed to be read, and the exception to this ruling is chiefly relied on as a ground for reversing the judgment of the court below.

The acknowledgment certified with this deed, which purports to have been taken in open court, in Halifax county, North Carolina, at November sessions, 1807, is admitted not to have been such as the registration acts then required, nor was it certified under the seal of the court, as required by law. But an act was passed in 1839, by the legislature of Tennessee, the 9th section of which contains the following provision : That when-

ever a deed has been registered "twenty years or more, the same shall be presumed to be upon lawful authority, and the probate shall be good and effectual, though the certificate on which the same has been registered has not been transferred to the register's books, and no matter what has been the form of the certificate of probate or acknowledgment."

In the early settlement of most of our States, the forms of conveyances of land were very simple ; and they were usually drawn either by the parties themselves, or by persons equally ignorant of the proper forms of certificates of acknowledgment required by law.

In some States, the statutes concerning acknowledgments and registry were stringent, while the practice was loose and careless. And, in some, the courts by unnecessary strictness in their construction of the statutes, added to the insecurity of titles, in a county where too many have acted on the supposition that every one who can write is fit for a conveyancer. The great evils likely to arise from a strict construction applied to the *bonâ fide* conveyances of an age so careless of form, have compelled legislatures to quiet titles by confirmatory acts, in order to prevent the most gross injustice.

The act in question is one of these ; it is a wise and just act; it governs this case, and justifies the court in admitting this deed in evidence. It was registered in 1809, and some of the grantees have been in possession under it ever since. After such a length of time, the law presumes it to have been registered on lawful authority, without regard to the form of certificate of probate or acknowledgment. As a legal presumption it is conclusive that the deed was properly acknowledged, although the contrary may appear on the face of the papers.

It is not a "retrospective law" under the constitution of Tennessee, which the legislature is forbidden to pass. It is prospective; declaring what should the eafter be received in courts as legal evidence of the authenticity of ancient deeds. It makes no exception as to the rights of married women, and the courts can make none. Informalities and errors in the acknowledgments of *feme coverts*, are those which the carelessness and ignorance of conveyancers were most liable to make, and which most required such curative legislation.

The registration being thus validated, copies of such deeds stand on the same footing with other legally registered deeds, of which copies are made evidence by the law.

The objections to the form of this deed, that it has no effective words of grant to convey a fee, nor states a consideration, nor sufficiently describes the grantees, cannot be supported. It is true, it is a very informal conveyance, but it contains

enough within it to show its validity. It appears that Anthony Bledsoe, as locator of the land for Lang, was entitled by their contract to one fourth. The whole legal title was in Lang's devisees, the equitable title to one fourth in Bledsoe's devisees. The deed does not contain the words give, grant, bargain, and sell, &c., but only " a release and quitclaim forever, unto the legatees and devisees of Anthony Bledsoe, deceased." The will of Bledsoe is in evidence. The deed, by this description, necessarily refers to that instrument to ascertain the persons who are such "legatees and devisees," and thus far incorporates it. It contains, therefore, a sufficient description of the grantees.

It has no words of inheritance, because it is a release of the bare legal title to equitable owners in fee, on partition between them as tenants in common. This appears on the face of the deed. The consideration of the conveyance is stated to be a release, on behalf of the grantees, " of all claims under a certain contract," &c. By the common law, there is a distinction between a release by one joint-tenant to another, and the same as between tenants in common ; the first requires no words of inheritance, but the latter does. But this technical distinction is founded on feudal reasons with respect to livery of seisin, which have no application where the release is to the equitable owner in fee. By the statutes of Tennessee, registering a deed is the only livery of seisin required.

But whether the deed passed the legal estate in fee or not, was a question not arising in the case, as the lessor of plaintiff was one of the devisees of Anthony Bledsoe, and therefore one of the original grantees in the deed, and had a legal as well as equitable estate.

The objection to the record of partition between the heirs or devisees of Nicholas Lang, because it was *res inter alios acta*, ought not to have been made. The authenticity of the record was not disputed, and if it had any legal bearing whatever on the title of the plaintiff, the defendants, who had as yet shown no title, cannot object to the muniments of plaintiffs' title, when offered in evidence, whether they be deeds, wills, or partitions, " because they are *res inter alios acta*."

The judgment of the circuit court is therefore affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the middle district of Tennessee, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby affirmed, with costs.